**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                         **Case No. 3:10cr30/MCR**

**ROBERT E. BOURLIER and
VICTORIA BOURLIER,**

      **Defendants.**

_____/

## <u>ORDER</u>

Pending before the court is Defendant Robert E. Bourlier's Renewed Motion for Judgment of Acquittal (doc. 295) and Motion for New Trial (doc. 294), which the government opposes (docs. 298 & 299).  Following a three-week jury trial, Defendant Dr. Robert Bourlier, a physician, was convicted of one hundred and forty-three (143) counts of the one hundred-fifty (150) count indictment against him.  The indictment charged crimes of executing a scheme to defraud health care benefit programs, in violation of 18 U.S.C. §§ 1347(1),(2) and 1349; and dispensing controlled substances, and dispensing controlled substances resulting in two deaths, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(1)(D), (b)(2) and 18 U.S.C. § 2.  Having presided over the trial and having carefully reviewed the record, including the evidence presented at trial, pertinent law, and the parties' arguments, the court finds that the motions should be denied.

**Renewed Motion for Judgment of Acquittal**

Defendant renews his motion for judgment of acquittal, arguing (1) that the government failed to call as witnesses at trial all of the defendant's former patients who were listed in the indictment, (2) that the government failed to establish an applicable threshold standard of medical care by which the jury could measure his conduct, (3) that Dr. Bourlier acted within the course of professional medical practice because he followed

FDA-approved labeling and prescribing directions in prescribing controlled substances, and (4) that the government failed to establish that Dr. Bourlier caused patient deaths. *See* Fed. R. Crim. P. 29. The government asserts that the evidence was in all respects sufficient to sustain the convictions.

All criminal convictions must be proven by "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Thus, to sustain a verdict on a motion for judgment of acquittal challenging the sufficiency of the evidence, the court must determine whether the evidence, when viewed in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, was sufficient for a reasonable jury to find the defendant guilty of all essential elements of the offense charged beyond a reasonable doubt. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999), *cert. denied* 532 U.S. 996 (2001); *see also United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (noting "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt" (internal marks omitted)), *cert. denied* 522 U.S. 1133 (1998), *modified in part on other grounds by United States v. Toler*, 144 F.3d 1423, 1427 (11th Cir. 1998).

Defendant's argument that the evidence is insufficient because the government failed to call as a witness every patient whose records served as a basis for a count in the indictment is not supported by law. Defendant argues that of the 55 patients identified in the indictment, "only several" of them were called to testify; that the government's expert witness did not physically examine the patients; and that medical records alone do not justify conviction, relying heavily on *United States v. Tran Trong Cuong*, 18 F.3d 1132 (4th Cir. 1994) (holding expert testimony regarding a pattern of conduct based on a summary of patient files could not sustain convictions). There is no legal requirement that each count must be proven by direct evidence such as patient testimony, as opposed to

circumstantial evidence. In fact, the statute provides for conviction where death results, and thus no direct patient testimony would be possible. Here, the government presented the direct testimony of eight patients who were identified in the indictment and circumstantial evidence regarding the remaining counts. Family members of some patients testified as did several patients who were not identified in the indictment.[1] Importantly, the medical records and prescriptions of every patient identified in the indictment and representing a separate count of the indictment were admitted into evidence and reviewed by the government's expert medical witness, Dr. Parran. At trial, Dr. Parran rendered an opinion as to each count that, based on his review, Dr. Bourlier had acted outside the bounds of legitimate medical practice and for no legitimate medical purpose. There was evidence that Dr. Bourlier conducted minimal medical examinations, ignored warning signs, and did not conduct the type of examinations, screening or tests that could have revealed that a patient's subjective pain complaints were a ruse. Dr. Bourlier repeatedly failed to obtain medical records for his patients or record all necessary information properly, and he routinely refilled prescriptions early and prescribed medication with minimal or no objective supporting documentation in the patient's medical record. The evidence was sufficient to support the verdicts.

*Tran Trong Cuong*, on which Defendant relies, does not stand for the proposition that patients must testify to support each charge; instead, the Fourth Circuit reversed convictions on 80 out of 127 counts where the patients neither testified nor were presented to the jury through the physician's medical records. 18 F.3d at 1141. Those counts had been supported solely by evidence of prescriptions and a summary report of patient files. The expert witness in that case did not discuss by name the patients who did not testify nor did he comment on their treatment or lack of treatment or their prescriptions that were in evidence; he stated only that he had identified a pattern of prescribing that he did not think was justified. *Id.* More importantly, the expert admitted that some of the medical charts did not provide sufficient information from which to conclude that the prescriptions were

---

[1] Seven of the 55 patients identified in the indictment were deceased by the time of trial and so could not have testified.

actually improper; nevertheless this information was included in the summary and formed the basis of separate counts.  *Id.*  The court therefore reversed 80 of the 127 convictions stating, "[a] defendant is entitled to individual consideration of every count in an indictment by the jury and evidence sufficient to convict on each count beyond a reasonable doubt." *Id.* at 1142.  Such evidence is more often than not circumstantial.  *See generally United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009) (noting in a health care fraud case where the government "did not offer individualized patient testimony" that "circumstantial evidence alone can sustain a guilty verdict" where expert testimony is "sufficiently specific to the patient, date, and services in the indictment"), *cert. denied*, 131 S. Ct. 990 (2011); *United States v. Brown*, 553 F.3d 768, 780 (5th Cir. 2008) (upholding a verdict convicting pharmacists of distributing drugs other than for a legitimate medical purpose and noting that "our standard of review does not change if the evidence that sustains the conviction is circumstantial rather than direct" (internal marks omitted)), *cert. denied*, 130 S. Ct. 246 (2009).  Here, contrary to Dr. Bourlier's assertion, the government did not rely on mere summaries or an impermissible presumption that Defendant must be guilty on all counts due to a pattern that evolved from the testimony of a few witnesses.  Instead, as noted, the record at trial included the patient medical files from Defendant's practice and prescriptions supporting every count in the indictment as well as testimony about each patient named in the indictment from patients, patient families, pharmacists and medical experts from which a rational juror could find Defendant guilty beyond a reasonable doubt of each count presented.[2]

Defendant's argument that the government failed to establish an applicable threshold standard of medical care by which the jury could measure Dr. Bourlier's conduct also fails.  A prescription for a controlled substance is lawful if issued "for a legitimate medical purpose" by a physician "acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).  As Defendant argues, the difference between civil malpractice

---

[2] Furthermore, the fact that the jury found Dr. Bourlier not guilty on one of the controlled substances counts and was unable to agree with regard to three of the controlled substances counts supports the court's conclusion that Defendant received individual consideration by the jury as to each count.

and criminal conduct is a matter of degree, but precisely for this reason, a clearly articulated criminal standard for every medical decision is not possible. The Eleventh Circuit has indicated, consistent with Supreme Court precedent, that it is appropriate to instruct the jury to focus on whether the doctor acted "'in accordance with a standard of medical practice generally recognized and accepted in the United States.'" *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008) (quoting *United States v. Moore*, 423 U.S. 122, 139 (1975)). The government presented expert medical testimony regarding acceptable medical standards and whether Dr. Bourlier's conduct was outside its bounds, and the Defendant also presented expert medical testimony regarding the applicable medical standards. The court finds that there was sufficient evidence of a "generally-accepted standard of medical practice," *id.*, to guide the jury's consideration of whether that standard was violated by the Defendant. Moreover, the court specifically cautioned the jury that Dr. Bourlier was not on trial for medical malpractice or negligence. The jury was required to find that the Defendant issued each prescription with knowledge that it was being issued not for a legitimate medical purpose in the usual course of professional medical practice, and viewing the record in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, the evidence was sufficient for a reasonable jury to find the defendant guilty of all essential elements of the offense charged beyond a reasonable doubt.

Defendant argues that the evidence is insufficient to sustain the convictions because Dr. Bourlier followed FDA-approved labeling and prescribing directions in prescribing the controlled substances. The legal standard is not whether the FDA approved dosages were followed, but whether the defendant's conduct was not for a legitimate medical purpose in the usual course of practice. While evidence of FDA labeling could contribute to a finding that a defendant's actions were within the usual course of practice, and the defendant was free to make this argument, the jury was likewise free to reject that evidence and argument in favor of other evidence indicating that his conduct was not within the ususal course or for a legitimate medical purpose. The government's medical expert, Dr. Parran, testified that Dr. Bourlier's conduct was not for a legitimate

purpose in the usual course of practice, and the jury was free to rely on this testimony.

Finally, Defendant argues that the evidence was insufficient because the government failed to establish that his treatment or prescriptions were the proximate cause of the two patient deaths charged in the indictment. The court disagrees with counsel's assertion that the legal standard of proximate cause was required. The statute requires proof that death "results" from the distribution of a controlled substance, 21 U.S.C. § 841(b)(1)(C), and the jury here was required to find that the deaths resulted from the defendant's conduct if the deaths would not have occurred but for but for the decedents' use of the charged controlled substances dispensed by the defendant as charged. This "but for" standard is a correct statement of the level of causation required under the statute. *See, e.g.*, *United States v. Houston*, 406 F.3d 1121, 1124 (9th Cir. 2005) (holding the passive language of "death results" eliminates any statutory requirement of foreseeability); *United States v. Soler*, 275 F.3d 146, 152-53 (1st Cir.) (holding reasonable foreseeability is not required), *cert. denied*, 535 U.S. 1071 (2002); *United States v. McIntosh*, 236 F.3d 968, 972-73 (8th Cir. 2001) (holding that the language of section 841(b)(1)(A), which is identical to section 841(b)(1)(C), is "unambiguous and that giving effect to its plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement"), *cert. denied*, 532 U.S. 1022 (2001); *United States v. Robinson*, 167 F.3d 824, 831 (3d Cir.) (holding Congress's use of the plain language of "death resulted" does not require application of common law concepts of proximate cause), *cert. denied*, 528 U.S. 846 (1999); *see also United States v. Hatfield*, 591 F.3d 945, 948 (7th Cir. 2010) (stating the language "results from" requires the minimum concept of cause, which is a "but for" standard; that is, that the death would not have occurred had the drugs not been ingested, but expressing "some misgivings" about interpreting it to impose strict liability).[3]

---

[3] *See also United States v. Rebmann*, 226 F.3d 521, 525 (6th Cir. 2000) (commenting in dicta that "[o]n its face, the statute is, in effect, a strict liability statute"), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 385 (6th Cir. 2002). The Sixth Circuit has not since revisited the question directly in the context of 21 U.S.C. § 841, except to reserve the issue for another day. *See United States v. Atkins*, 289 Fed. Appx. 872, 877 & n.3 (stating, "[w]e leave for a more appropriate case he question of whether to join our sister circuits in holding that § 841(b)(1)(C) does not require proof of proximate cause or the foreseeability of death"). However, that court has since concluded that proximate cause is the appropriate standard in the

The court finds that the evidence at trial was sufficient on each element for a rational juror to have found Dr. Bourlier guilty on the counts of which he was convicted. *See Jackson*, 443 U.S. at 319 (requiring convictions to be upheld if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Therefore, Defendant's renewed motion for acquittal will be denied.

**Motion for New Trial**

The court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Defendant suggests error throughout the trial, both individually and cumulatively, has deprived him of a fair trial. *See United States v. Baker*, 432 F.3d 1189, 1223, 1203 (11th Cir. 2005) (noting the court will reverse if the cumulative effect of errors is prejudicial). Dr. Bourlier argues that the court erred in rejecting his proposed jury instructions regarding proximate cause and defining the standards of care, erred in admitting improper expert testimony, and improperly admitted facts regarding the deaths of patients whose deaths were not charged in the indictment. The court has already considered and rejected these arguments.

The court has concluded, as noted above and in earlier rulings, that proximate cause is not the proper standard of causation based on the plain language of the statute, and that the jury was properly instructed regarding the standard of care. The court instructed the jury that to establish death resulted, the government had to prove that the defendant's conduct "directly and in natural and continuous sequence produced or contributed substantially to producing the death, so that it can reasonably be said that 'but for' the Defendant's conduct, the death would not have occurred." (Doc. 244, at 11) A defendant is entitled to an instruction on his theory of defense when it is supported by law, but "[i]f the charge given to the jury adequately and correctly covers the substance of the requested instruction, there is no reversible error." *See United States v. Lanzon*, 639 F.3d

---

context of the "death results" enhancement for health care fraud, 18 U.S.C. § 1347, which is a willful crime. *See Martinez*, 588 F.3d at 318-19. The court noted that the parties had not challenged the district court's application of the proximate cause standard, and the opinion does not cite *Rebmann* or discuss any cases dealing with the enhanced penalty under the Controlled Substances Act. *See id.* at 318. The court thus finds *Martinez* to be distinguishable.

1293, 1302 (11th Cir. 2011) (internal marks omitted).  The court finds no basis for granting a new trial on this claim because the instruction correctly stated the law, as outlined above. *See United States v. Rodriguez*, 279 F.3d 947, 951 (11th Cir. 2002).

Defendant argues that there was insufficient notice of what standards of care applied to his conduct and that the jury was not adequately instructed on state medical standards of care by which to judge the degree of his departure from those standards.  The court rejected Defendant's series of proposed instructions regarding particular standards of medical care but permitted the defense to present evidence regarding the appropriate standard.  The Defendant presented the expert testimony of Dr. Richard Rauck, who disagreed with the government's expert.[4]  *See United States v. Chube II*, 538 F.3d 693, 698 (7th Cir. 2008) (noting both sides are entitled to put in their theory of the case regarding the appropriate standard of medical care).  The court's instruction on the standard of care stated left the determination of the appropriate standard to the jury, stating in part, as follows:

> A controlled substance is prescribed by a physician in the usual course of professional practice and, therefore, lawfully, if the substance is prescribed by him in good faith as part of his medical treatment for the patient in accordance with the standards of medical practice generally recognized and accepted in the United States.

> Good faith is a complete defense to the charges in Counts 21 through 150 of the indictment since good faith on the part of the Defendant is inconsistent with the essential element of knowledge or intent to issue a prescription not for a legitimate medical purpose.  Good faith means good intentions and the honest exercise of good professional judgment as to a patient's medical needs. It is an honest effort on the physician's part to prescribe controlled substances in compliance with an accepted standard of medical practice.  A doctor who knowingly issues a prescription not for a legitimate medical purpose in the usual course of professional practice does not act in good faith.

> In order to determine whether or not a prescription or prescriptions

---

[4]  During the cross examination of a Government witness, Defendant admitted exhibit DOH-1, a copy of a Florida Administrative Code rule, Florida Standards of Practice for Medical Doctors – Standards for the Use of Controlled Substances for Treatment of Pain.

were issued by the Defendant in good faith for a legitimate medical purpose in the usual course of a professional practice, you may consider all of the evidence admitted at trial, including, but not limited to, the circumstances surrounding the prescribing of the substance in question, the statements of the parties to the prescription transactions, any expert testimony as to what is the usual course of medical practice, and any other competent evidence bearing on the purpose for which the substances in question were prescribed.

I caution you that the Defendant is not on trial in this case for medical malpractice or negligence, neither of which constitutes a crime. In other words, the Defendant cannot be found guilty based solely on your finding that he failed to exercise reasonable medical care on behalf of his patients by his prescription practices, that he acted outside the standard of care, or even if you believe he is a bad doctor. Instead, in order to find the Defendant guilty, you must find that at the time he issued a prescription, he did so with knowledge that it was not being issued for a legitimate medical purpose in the usual course of his professional practice.

(Doc. 279, at 21-22)

This instruction plainly required the jury to consider whether the prescriptions were issued by the Defendant in good faith for a legitimate medical purpose in the usual course of a professional practice, considering all of the evidence admitted at trial, including, but not limited to, the circumstances surrounding the prescribing of the substance in question, the statements of the parties to the prescription transactions, and any expert testimony as to what is the usual course of medical practice. As noted above, the appropriate standard is "whether the physician prescribes medicine 'in accordance with a standard of medical practice generally recognized and accepted in the United States.'" *Merrill*, 513 F.3d 1306 (quoting *Moore*, 423 U.S. at 139). The instruction given was consistent with that language, and the instructions as a whole did not convey to the jury that breaching a civil standard of care alone could result in conviction, but in fact advised them otherwise. *See generally*, *United States v. Smith*, 573 F.3d 639, 649 (8th Cir. 2009). Moreover, the instruction also clearly informed the jury that good faith was a defense. *See id.* (noting the good faith instruction must rest on an objective "generally-accepted standard of medical practice"). Determining what conduct lies beyond the bounds of professional medical practice and

whether the Defendant knowingly engaged in that conduct was a task for the jury. *See United States v. Johnson*, 322 Fed. Appx. 660, 667 (11th Cir. 2009) (unpublished) (indicating that criminal knowledge and intent are issues for the jury).

Defendant argues that the court erred in admitting improper expert testimony because the government's expert, Dr. Parran, was not qualified to testify regarding medical standards in Florida, and that the standard applicable to pain specialists does not apply to Dr. Bourlier. The court finds no error. The record does not reflect that Dr. Bourlier was improperly held to a standard of care that applied only to specialists and not to him. Defendant also argues that Dr. Parran was permitted to provide improper legal opinion. The court again disagrees. Testimony that Dr. Bourlier's conduct was outside the course of professional practice and not for legitimate medical purpose did not constitute improper legal opinion. Experts are permitted to testify regarding, and to disagree about, whether a defendant's conduct was within or outside of applicable medical standards. *See generally United States v. Moore*, 423 U.S. 122 (1975); *United States v. Katz*, 445 F.3d 1023, 1032 (8th Cir.) (stating experts are prohibited from offering opinion on a defendant's mental state not from providing opinions that link standards of care to the existence of a legitimate medical purpose), *cert. denied*, 549 U.S. 956 (2006). In this case, Dr. Parran was not permitted to testify regarding the ultimate issues of the defendant's intent or knowledge, or guilt or innocence of the crimes charged. *See Chube II*, 538 F.3d at 700 (affirming admission of Dr. Parran's expert testimony where expert was not allowed to offer opinion on defendant doctor's subjective intent); *see also United States v. McIver*, 470 F.3d 550, 561-62 & n.14 (4th Cir. 2006) (noting whether the defendant acted outside the bounds of professional practice is a question of fact for the jury on which expert testimony is appropriate), *cert. denied*, 550 U.S. 936 (2007). Instead, Dr. Parran properly set forth the applicable standards by which appropriate medical care is determined and offered his opinion that the defendant's conduct exceeded that medical standard.

Finally, the defendant argues that the court erred by permitting testimony regarding other patients' deaths, which were not charged in the indictment. The court rejected these arguments by order dated April 23, 2011 (doc. 232), denying defendant's motion in limine

(doc. 178) on this ground, and now denies the motion for new trial on this basis for the same reasons already stated in the prior order. *See Merill*, 513 F.3d at 1303 ("[E]vidence of the quantity and combination of prescriptions [defendant] wrote during the relevant period is directly related to . . . whether [defendant] was relieved of liability under the Controlled Substances Act because he acted in the 'usual course of professional practice.'").

Accordingly, it is hereby ORDERED that defendant's renewed motion for judgment of acquittal (doc. 295) and motion for new trial (doc. 294) are DENIED.

**DONE and ORDERED** this 26th day of August, 2011.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**